**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0005130
19-NOV-2014
09:10 AM**

NO. CAAP-13-0005130

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

DANA E. VINCENT, Plaintiff-Appellee, v.
JACQUELINE CLOUSE, Defendant-Appellant, and
JOHN DOES, 1-20, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 10-1-2336)

MEMORANDUM OPINION
(By:  Foley, Presiding J., Reifurth and Ginoza, JJ.)

Defendant-Appellant Jacqueline Clouse (**Clouse**) appeals
from the September 18, 2013 "Order Granting Plaintiff Dana [E.]
Vincent's Motion for Partial Summary Judgment as to Liability,
Filed on January 11, 2013," (**Summary Judgment Order**) entered in
the Circuit Court of the First Circuit[1] (**circuit court**).  This
case arises from a motor vehicle accident in which both parties
deny liability.

## I.  BACKGROUND

Parties substantially dispute all the facts in this
case.  On April 29, 2008, Plaintiff-Appellee Dana E. Vincent
(**Vincent**) was driving her 1999 Ford Escort vehicle from her
workplace, a Taco Bell restaurant in Kaneʻohe, Hawaiʻi.  Vincent
was exiting the workplace parking lot and attempting to make a
left turn onto Kamehameha Highway.  That section of the highway
has two lanes heading north towards Kahuku, two southbound lanes,

---

[1]  The Honorable Rhonda A. Nishimura presided.

and a "turning lane" (also referred to as the "suicide lane") between the northbound and southbound lanes to allow cars in that lane to turn left from either direction. Along both sides of Kamehameha Highway signs stating "center lane, [two-way] turn" are placed at intervals.

The Motor Vehicle Accident Report includes the following description of the accident: "[Clouse] driving in the middle lane to make left turn struck by [Vincent] exiting driving onto [Kamehameha] Hwy. crossing two lanes of [Kamehameha] Hwy. to make left turn. [Vincent] attempting to get onto [Kamehameha] Hwy. and go northbound."

Vincent said she was attempting to make a left hand turn from the workplace parking lot and two drivers in the southbound lanes halted their vehicles and waved her through. Clouse said that she had been driving her vehicle, a 2001 Honda Civic, down the turning lane at a speed of between five and ten miles per hour when she "got hit." Clouse's expert accident reconstruction witness, Brad M. Wong (**Wong**) stated that he believed Clouse was traveling between 10 and 15 miles per hour and Vincent was moving at between 7 to 10 miles per hour. Vincent's expert witness, John E. Muse (**Muse**) said he believed Clouse was moving at between 15 and 20 miles per hour. The speed limit for that part of Kamehameha Highway is 25 miles per hour.

Clouse said she drove down the turning lane in order to "turn left at the Benjamin Moore paint store." Clouse said she did not know how long she was driving in the turning lane, but that it was "the distance from the Shell station to the entrance to the Benjamin Moore store."

Clouse stated that she entered the turning lane "as soon as I could see the Benjamin Moore store," and she "didn't notice that the cars had stopped until I actually was right there upon it. I looked to my right and I saw [Vincent] coming out of the Taco Bell." Clouse stated that she had seen other cars turn into the Benjamin Moore store using the turning lane; as she was driving down the turning lane she saw the lane was ending just past the entrance to the Benjamin Moore paint store and "I had

2

not made a decision at that point whether – what I was going to
do."  Clouse continued:

> I got hit before I could finally make my decision am I going
> to make this turn and go in through the arrow that says
> "out," or am I going to stop and wait and merge back into
> the other lane.  I hadn't made my decision, she made it for
> me.

Clouse stated she saw Vincent's "car coming quickly
towards me and knew I would be hit."  Vincent stated her vehicle
collided with Clouse's and that she did not see Clouse's vehicle
until it impacted her own car.

On November 1, 2010, Vincent filed a complaint alleging
that Clouse's "conduct constitutes negligence, negligence per se,
gross negligence, and reckless and willful disregard of the
rights and safety of [Vincent]" and seeking damages for medical
expenses, "pain and suffering, severe emotional distress and
mental anguish, the loss of future enjoyment of life, and other
special and general damages . . . ."

On November 29, 2010, Clouse filed her answer to
Vincent's complaint and a demand for jury trial.  Clouse and
Vincent conducted discovery, exchanged requests for answers to
interrogatories, and submitted the matter to arbitration.

In her first answer to Vincent's interrogatories, dated
February 16, 2011, Clouse wrote:

> I was in the second lane on Kamehameha Highway heading
> towards William Henry Road.  As I approached the Shell gas
> station, I noticed both lanes of traffic were stopped for
> the red light.  Still in the second lane, I noticed the
> Benjamin Moore Paint Store to my left.  I decided to check
> out this store.
>
> . . . I entered the third turning lane (somewhere between
> the Shell station and the Hawaiian Tel Building).  As I proceeded
> at a speed that was at or less than the speed limit, [Vincent]
> entered my lane, striking my vehicle with what appeared to be at
> great speed.

On July 6, 2011, Clouse deposed Vincent.  Vincent said
in her deposition that the time it took her to move from the Taco
Bell driveway to the third lane was about two and a half minutes
(a handwritten note amended that time to reflect 30 seconds); she
saw no traffic in the turning lane when she looked to her left;
she proceeded through the turning lane; and then collided with

Clouse's car.

On July 8, 2011, Vincent deposed Clouse. In that deposition, Clouse stated that Ishmael Stagner II (**Stagner**) was at the bus stop at the time of the accident and that he witnessed the accident. Vincent listed Stagner as a non-expert witness, who would testify to the facts and circumstances of the incident.

By report dated November 14, 2011, Muse submitted his analysis of the April 29, 2008 accident (**Muse's Report**). Muse's Report was based on the Motor Vehicle Accident Report, photographs of the accident scene and vehicles, depositions and answers to interrogatories of various witnesses and parties, and a site inspection. Muse's Report referred to the deposition of Stagner, who had been driving southbound on Kamehameha Highway in the morning. Muse's Report stated, "[a]n unknown vehicle pulled out of one of the Taco Bell driveways. The driver in front of [Stagner] applied the brakes. [Stagner] had to apply his brakes rapidly to avoid impacting the pickup in front of him. He did not see the collision, but he heard screeching brakes and a bang." Muse's Report stated, "it would have been physically impossible for [Clouse] to make the left turn into the [Benjamin Moore] paint store driveway." Muse concluded, "[s]ince [Vincent] could not have perceived [Clouse's] Honda as a hazard prior to accelerating into the center lane, and no vehicles could have been legally traversing the center lane at that point, the decision of [Vincent] to accelerate into the center lane was reasonable."

By report dated April 9, 2012 (**Wong's Report**), Wong submitted an analysis of the April 29, 2008 accident based on the Motor Vehicle Accident Report, photographs of the accident scene and vehicles, damage estimates, Muse's Report, and a site inspection. Wong's Report stated: "[t]he lack of any conclusion of speed makes any time/distance analysis opinion regarding the intentions of [Clouse] to make the turn into the Benjamin Moore driveway speculative and not within reasonable engineering certainty." Wong rejected Muse's opinion that Vincent "had no obligation to anticipate [Clouse's Honda] improperly driving in

4

the center turn lane since it terminated south of the Benjamin Moore driveway" by stating, "[t]he markings within the center turn lane actually would indicate to a normal driver that the area where the incident occurred is an area where vehicles would be traveling to turn left into the Benjamin Moore driveway."

On September 11, 2012, Vincent deposed Mark Kikuchi (**Kikuchi**), from the Department of Transportation Services of the City and County of Honolulu.

On September 20, 2012, Vincent filed a motion to add Kikuchi as a critical witness despite the parties' discovery cut-off date of September 12, 2012. Also on September 20, 2012, Vincent deposed Wong. Clouse filed her opposition to Vincent's motion to add a critical witness on September 24, 2012, to which Clouse appended a copy of Kikuchi's deposition and Muse's Report.

On September 25, 2012, Vincent filed her reply to Clouse's opposition to her motion to add a critical witness. Vincent's counsel appended a declaration to Vincent's reply, in which she declared, "[t]hrough the agreement of counsel for both parties, the depositions of [Wong and Muse] . . . will be after the discovery deadline, and have yet to be scheduled."

On October 8, 2012, the circuit court denied Vincent's motion to add a critical witness.

In his deposition taken on December 13, 2012, Wong opined that before entering into or crossing the turning lane,

> [Vincent] should have confirmed that no other vehicles were coming from her left that would pose an immediate hazard.
>
> . . . .
>
> . . . So my opinion is that [Vincent] failed to move forward enough and go slow enough to be able to confirm that no vehicles were close enough to constitute an immediate hazard.

Wong stated the basis of his opinion was that the damage to Vincent's vehicle and the speed was "consistent with [Vincent] accelerating from an area before the area of impact and before encroaching into the center turn lane[.]" Wong affirmed that "the proper use of a two-way turning lane is to enter the lane and make the left turn as immediately as possible[.]"

Wong's deposition included the following colloquy:

5

[Vincent's counsel:] When you chose the two radius distances of page 2 of your notes, why did you pick 30 and 40 as opposed to any other numbers?

[Wong:] Because those are the approximate distance [*sic*] from, well, the driveway, Taco Bell driveway where the accident occurred, to the driveway of Benjamin Moore.

[Vincent's counsel:] So you --

[Wong:] So, ultimately, [Clouse] need to get in here [the Benjamin Moore paint store driveway], right? So the radius is going to be approximately that much. Well, because she needs to do that, the turn. So the turn radius is going to be – well, it can't be more than 40 because, like you say, if it's more than 40, she's going to go past it.

[Vincent's counsel:] So then it is your belief that, had she started making the turn at the point where you've marked area of impact and if she was going at either 10 or 15 miles per hour, she had just enough room to get into the, let's say, incoming portion of the driveway of the paint store?

[Wong:] What I'm saying is that, based on the area of the impact and her speed, is that she could make the turn. And again, my measurements don't assume two things, which is – well my calculations assume a constant radius turn at a constant speed. But the variables that exist are braking as well as a nonconstant radius turn or cutting the turn more.

Wong acknowledged that his calculation did not include reaction time. In answer to whether Wong's opinion was premised on the assumption that Clouse was already making the turn at the time of impact, Wong stated: "No, because I think it's, like, 45 feet. So she has some room. She has some room to proceed and react; plus, again, that doesn't include any braking that's going to occur and any sort of shortening of the turn itself."

On January 11, 2013, Vincent filed a motion for partial summary judgment as to liability (**MSJ**). Vincent's MSJ was premised on the following arguments: (1) Clouse's use of the two-way left turn lane was illegal and negligent; and (2) Vincent had no reason or duty to anticipate Clouse's illegal conduct or that a motor vehicle would be in the position of Clouse's at the point of impact. Vincent claimed Clouse had driven about 200 feet, "the <u>entire length</u> of the center [two-way] turn lane, without making a turn. She had knowingly passed the two Shell station driveways, the bank driveway, and the public storage driveway without signaling for a turn or executing a turn." Vincent's counsel declared that Clouse had admitted that she never engaged

6

her left turn signal prior to impact during a court annexed arbitration program hearing.

On January 25, 2013, Clouse filed her opposition to Vincent's MSJ. Clouse objected (1) to Vincent's exhibits on the basis that they could not be authenticated by Vincent's counsel because he was not a custodian of these records and that the exhibits lacked foundation; (2) to the submission of excerpts of Kikuchi's deposition because the circuit court had denied Vincent's attempt to include him as a witness; and (3) to the inclusion of Vincent's counsel's declaration, which included statements made by Clouse during the arbitration hearing on the basis of Hawai'i Arbitration Rules, Rule 23(c)[2], which provides: "[n]o statements or testimony made in the course of the arbitration hearing shall be admissible in evidence for any purpose in the trial de novo."

Clouse argued that her testimony in which she stated she was driving down the turning lane with the intention to turn into the Benjamin Moore paint store raised a genuine issue of material fact. She argued that she was "preparing" to make a turn and was therefore allowed to be in the turning lane pursuant to the Revised Ordinances of the City and County of Honolulu (**ROH**), Section 15-6.7, titled "Traffic lane markings," which provides in relevant part:

> (c) When a lane is designated a [two-way] left turn lane in Schedule XXXII attached to the ordinance codified in this section and made a part hereof and by the use of pavement markings, a vehicle shall not be driven thereon except when preparing for or making a left turn from or into a highway. A left turn shall not be made from any other lane where [two-way] left turn lanes have been designated. This section shall not prohibit driving across a [two-way] left turn lane.

(Emphasis added and asterisk omitted.) Clouse argued that Vincent was not entitled to summary judgment on the issue of comparative negligence because Vincent allegedly violated Hawaii Revised Statutes (**HRS**) § 291C-64 (2007 Repl.), titled "Vehicle

_____

[2]     This case was referred to the Court Annexed Arbitration Program resulting in the parties arbitrator filing a sealed arbitration award on August 11, 2011.

entering highway from private road or driveway", which provides:

> The driver of a vehicle to enter or cross a highway
> (including bicycle lane or bicycle path) from an alley,
> building, private road, or driveway or from any public or
> private property other than a highway that is adjacent to
> the highway, shall yield the right-of-way to all vehicles or
> bicycles approaching on the highway (including bicycle lane
> or bicycle path) to be entered.

In her opposition to Vincent's MSJ, Clouse attached transcripts from the December 13, 2012 deposition of Wong, July 6, 2011 deposition of Vincent, and the July 8, 2011 deposition of Clouse.

At its September 3, 2013 hearing, the circuit court orally granted Vincent's MSJ. The circuit court found that no dispute existed with respect to the purpose of the turning lane; that a person using the turning lane could access the Benjamin Moore paint store; that Clouse had not been using a left turn signal; that there was "little dispute" as to Clouse's speed at the point of impact; and that Vincent had met her burden on the issue of liability.

On September 18, 2013, the circuit court filed its Summary Judgment Order, which provided that Vincent was entitled to summary judgment as to a matter of law as to:

> (1) [Vincent's] claims that [Clouse] was negligent and that
> [Clouse's] negligence was the sole proximate cause of the
> subject accident; and (2) [Clouse's] claims/defense that
> [Vincent] was comparatively negligent and that [Vincent's]
> comparative negligence was a proximate cause of the
> accident.

On September 25, 2013, Clouse filed a motion for leave to file an interlocutory appeal. On October 4, 2013, Vincent filed her opposition to Clouse's motion. On October 18, 2013, the circuit court granted Clouse's motion for leave to file an interlocutory appeal.

On November 8, 2013, Clouse filed her notice of appeal from the Summary Judgment Order.

## II. STANDARD OF REVIEW

### Summary Judgment

The appellate court reviews "the circuit court's grant or denial of summary judgment de novo." Querubin v. Thronas, 107

Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (quoting <u>Durette v. Aloha Plastic Recycling, Inc.</u>, 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004)).

The Hawai'i Supreme Court has often articulated that

summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

<u>Querubin</u>, 107 Hawai'i at 56, 109 P.3d at 697 (quoting <u>Durette</u>, 105 Hawai'i at 501, 100 P.3d at 71).

Hawai'i Rules of Civil Procedure (**HRCP**) Rule 56(e) provides in relevant part:

**Rule 56. Summary judgment.**

. . . .

*(e) Form of affidavits; further testimony; defense required.* . . . When a motion for summary judgment is made . . . , an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Thus, "[a] party opposing a motion for summary judgment cannot discharge his or her burden by alleging conclusions, 'nor is [the party] entitled to a trial on the basis of a hope that [the party] can produce some evidence at that time.'" <u>Henderson v. Prof'l Coatings Corp.</u>, 72 Haw. 387, 401, 819 P.2d 84, 92 (1991) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice & Procedure: Civil 2d</u> § 2727 (1983)).

### III. DISCUSSION

Vincent asserts that this court's review of the pleadings, depositions, admissions, and other record evidence should be restricted to those that were cited in Clouse's memorandum in opposition to Vincent's MSJ. Vincent relies on <u>Munoz v. Yuen</u>, 66 Haw. 603, 605, 670 P.2d 825, 826 (1983), which

held:

> we would be imposing an undue burden on the trial court by requiring it to examine every deposition, answer to interrogatory, or admission on file, especially where the record is voluminous. It is the duty of counsel to specifically cite those portions of the record that raise or dispose of genuine issues of material fact.

Munoz, however, addressed the issue of "whether depositions on file in the case but not brought to the trial court's attention in connection with a motion for summary judgment can be considered by the appellate court in determining whether the award of summary judgment was proper." Id., 66 Haw. at 604, 670 P.2d at 826. The Munoz court examined motions filed in the lower court as well as the "transcript of the proceedings below" and determined that depositions cited in the appellant's brief were not brought to the lower court's attention and therefore would not be reviewed on appeal. Id., 66 Haw. at 606, 670 P.2d at 827. However, in this case, Clouse brought passages from Wong's deposition to the circuit court's attention at the hearing on Vincent's MSJ.

Clouse contends her use of the turning lane was a disputed issue of fact and therefore the Summary Judgment Order was improper. Vincent contends Clouse violated traffic laws and was 100% liable for the accident as a matter of law. Vincent also contends that Clouse was outside of the turning lane at the point of impact, was not lawfully using the highway, and therefore Vincent "had no legal duty to assume that a car might be illegally obstructing her path in the [two-way] turn lane."

Vincent relies on Wong's deposition testimony that Clouse was "outside" of the turning lane at the point of impact. Wong's diagram of the vehicles on the highway indicates Clouse's car was located at the point where the turning lane tapered off and some distance north of the Benjamin Moore paint store at the time of impact. Clouse, however, asserted that her vehicle was in the turning lane at the time of the collision.

Wong also stated that Clouse had approximately another 45 feet before reaching the Benjamin Moore paint store driveway and "[t]he markings within the center turn lane actually would

10

indicate to a normal driver that the area where the incident occurred is an area where vehicles would be traveling to turn left into the Benjamin Moore driveway."

Vincent contends Clouse's presence at the end of the turning lane violated ROH § 15-6.7(c), which prohibits vehicles from driving in the turning lane "except when preparing for or making a left turn onto a highway[;]" the Hawaiʻi Driver's Manual, which provides that turning lanes are to be used only for left turns and not for passing; and the Manual for Uniform Traffic Control Devices, which provides that solid double yellow lines at the end of left turn lanes indicate that vehicles should not use that part of the lane for turning.

Clouse contends she did not violate ROH § 15-6.7(c) or prohibitions against using the turning lane as a passing lane because she was preparing to make a left turn into the Benjamin Moore paint store. The parties' expert witnesses gave conflicting opinions as to whether Clouse could have made the left turn into the paint store.

As Clouse correctly argues, the lack of dispute as to whether Clouse violated a traffic law would not establish her liability for negligence. For summary judgment on Vincent's negligence claim to have been proper, there must not have been a genuine issue of material fact as to the following four elements: "(1) duty; (2) breach of duty; (3) causation; and (4) damages." Weite v. Momohara, 124 Hawaiʻi 236, 253, 240 P.3d 899, 916 (App. 2010) (quoting Cho v. State, 115 Hawaiʻi 373, 379 n.11, 168 P.3d 17, 23 n.11 (2007)). "It is the established rule in this jurisdiction that a driver must exercise a right of way in such a manner as to observe due care to avoid colliding with other persons or vehicles on the highway." Sherry v. Asing, 56 Haw. 135, 143, 531 P.2d 648, 655 (1975) (citing State v. Arena, 46 Haw. 315, 379 P.2d 594 (1963); Hymer v. Chai, 407 F.2d 136 (9th Cir. 1969). A driver's failure to conform to a law that establishes a standard of conduct to protect other drivers may be considered "evidence of negligence." Michel v. Valdastri, Ltd., 59 Haw. 53, 55, 575 P.2d 1299, 1301 (1978).

11

In addition to evidence of Clouse's allegedly-illegal use of the turning lane, Vincent also submitted Muse's Report and deposition, in which Muse opined that Vincent had no duty to anticipate Clouse's presence in the turning lane and that Clouse had caused the accident by improperly driving in a two-way left turn lane.

Clouse submitted Wong's Report, which reviewed Muse's Report and in which Wong offered contrary opinions, including that Vincent had failed to confirm that no vehicles were within the center turning lane and it was "reasonable to expect vehicles to traverse to turn left into driveways along Kamehameha Highway." In her opposition to Vincent's MSJ, Clouse argued that genuine issues of material fact existed as to Vincent's contributory negligence because she was required to "yield the right-of-way to all vehicles or bicycles approaching on the highway" pursuant to HRS § 291C-64 and failed to confirm that there were no approaching vehicles.

Vincent asserts that she could not have been contributorily negligent because in Wong's deposition testimony he "acknowledged [Vincent] was executing a legal left turn prior to the accident" and Wong stated, "[i]f [Clouse's] car was not lawfully in the area of impact, [Vincent] would have a reasonable basis for assuming that it was safe to proceed with her left turn even if she couldn't see all the way up the center lane." Vincent's assertion does not accurately reflect Wong's testimony. Wong testified that Vincent's attempt to execute a left turn would be reasonable if Clouse was not lawfully in the area of impact, and he further stated: (1) no statutes prohibited either driver from executing their maneuvers, and (2) Vincent had failed to confirm that vehicles were in the turning lane prior to proceeding to execute a left turn.

Genuine issues of material fact exist as to whether Clouse's use of the turning lane constituted an exercise of due care. Wong opined that a normal driver would understand that they were to use the turning lane to go into the Benjamin Moore paint store driveway. Clouse stated that she had seen other cars

12

use that driveway and turn left from the turning lane when going to the Benjamin Moore paint store.

Vincent contends "the physical evidence proves that it was impossible [for Clouse to turn into the paint store driveway] based on her speed and her position at the moment of impact[,]" thus leaving no dispute as to the material fact of whether Clouse was lawfully using the turning lane. Wong testified to the opposite conclusion, that Clouse could have turned into the driveway because it was 45 feet away; Clouse could have slowed her vehicle by braking; and Clouse could have narrowed the radius of her turn. Even if Clouse could not have succeeded in executing her left turn, this would not establish Vincent's lack of contributory negligence.

Vincent asserts that Clouse did not use a left turn signal. "[I]t would have taken another 1 to 1 1/4 seconds for [Clouse] . . . to put on her turn signal and begin turning . . . ." Clouse argued to the circuit court, and contends on appeal, that Vincent's counsel's declaration that Clouse "admitted" to not using a left turn signal during a court annexed arbitration hearing was the only basis for finding that she did not use a left turn signal and that this basis is improper. This alleged-admission would not be admissible at trial and the circuit court should not have taken it into consideration in its summary judgement order.

Hawai'i Arbitration Rules, Rule 23[3], titled "Procedures

---

[3]     Hawai'i Arbitration Rules, Rule 23 provides:

**Rule 23.     PROCEDURES AT TRIAL DE NOVO.**

(A) The clerk shall seal any arbitration award if a trial de novo is requested. The jury will not be informed of the arbitration proceeding, the award, or about any other aspect of the arbitration proceeding. The sealed arbitration award shall not be opened until after the verdict is received and filed in a jury trial, or until after the judge has rendered a decision in a court trial.

(B) All discovery permitted during the course of the arbitration proceedings shall be admissible in the trial de novo subject to all applicable rules of civil procedure and evidence. The court in the trial de novo shall insure that any reference to the arbitration proceeding is omitted from

(continued...)

at Trial De Novo" provides in part: "(C) No statements or testimony made in the course of the arbitration hearing shall be admissible in evidence for any purpose in the trial de novo." The purpose of this rule is to preserve "the interests of party litigants in the confidentiality of information disclosed during an arbitration proceeding" should the "trial court's efforts to promote a settlement prove fruitless and the case proceeds to a jury trial[.]" Kamaunu v. Kaaea, 99 Hawai'i 503, 507, 57 P.3d 428, 432 (2002) (holding that the substance of arbitration proceedings could be considered in a settlement conference).

HRCP Rule 56(e) requires "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence[.]" See Munoz, 66 Haw. at 605, 670 P.2d at 826 ("It is axiomatic that a motion for summary judgment should be decided on the basis of admissible evidence.") Because Clouse's alleged-admission that she failed to use her left turn signal during the arbitration hearing would not be admissible in evidence, the circuit court should not have relied upon this admission in its Summary Judgment Order.

Genuine issues of material fact exist as to whether Vincent had been operating her vehicle with due care when executing her turn. Wong's statement that Vincent would have a reasonable basis for executing her left turn through three lanes of traffic was premised on the assumption that Clouse was "not lawfully in the area of impact" and, as discussed, genuine issues as to whether Clouse violated her legal duty of due care remain. Whether Vincent observed and was justified in concluding she could complete her turn without endangering cars in either direction also remains a disputed material fact. Vincent testified that she did not see Clouse approaching in the turning lane. The speed at which Clouse was approaching Vincent's path

---

[3](...continued)
any discovery taken therein and sought to be introduced at the trial de novo.

(C) No statements or testimony made in the course of the arbitration hearing shall be admissible in evidence for any purpose in the trial de novo.

is disputed and Wong opined that Vincent should have anticipated the possibility of a vehicle present in the turning lane. These are disputes of material facts that raise genuine issues as to whether Vincent "was under no obligation to yield" to oncoming traffic. The issue of whether Vincent should have yielded the right of way to Clouse should be submitted to a trier of fact. See Arena, 46 Haw. at 330, 379 P.2d at 603 ("On the evidence, the question of whether or not the proximity of the oncoming traffic required [the decedent driver] to yield the right of way was clearly open for the jury's determination.")

## IV. CONCLUSION

For the foregoing reasons, we vacate the September 18, 2013 "Order Granting Plaintiff Dana E. Vincent's Motion for Partial Summary Judgment as to Liability, filed on January 11, 2013," entered in the Circuit Court of the First Circuit and remand this case for further proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, November 19, 2014.

On the briefs:

Jonathan L. Ortiz
Wade J. Katano
Christine S. Prepose-Kamihara
(Ortiz & Katano)
for Defendant-Appellant.

Randall L.K.M. Rosenberg
Charles E. McKay
Moana A. Yost
(Rosenberg & McKay)
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

15